# Hohnka v. Eckley et al., County Commissioners

*Thompson & Baird,* for petitioner.
*John G. Love,* for defendants.

WALKER, P. J., November 10, 1939.—This is a proceeding in the nature of a mandamus instituted by Lewis Hohnka, who had been duly elected Overseer of the Poor of Philipsburg Borough at the general election in 1935, for a term of four years, against Paul Eckley, Balser Weber, and Alfred L. Bowersox, County Commissioners of Centre County, for the purpose of compelling defend-

ants to employ plaintiff in the administration of the county institution district and in the liquidation of the affairs of the Poor District of Philipsburg Borough, and to compel defendants to pay to plaintiff the sum of $30 a month, being the salary which plaintiff alleged he was receiving at the time he ceased to act as an overseer of the poor, to which office he had been elected, which said salary is claimed by plaintiff to be due him from January 1, 1938, and will continue to be due him until January 1, 1940. The record discloses that the office of overseer of the poor was abolished by the County Institution District Law of June 24, 1937, P. L. 2017, which became effective as of January 1, 1938.

To the petition which had been filed by plaintiff, a writ of alternative mandamus was issued on February 17, 1939, and a motion to quash was filed March 6, 1939, by defendants, setting forth the following reasons:

1. That as a matter of law petitioner, Lewis Hohnka, is not entitled to receive a salary of $30 per month as an overseer of the poor.

2. That the legislature of Pennsylvania, through the passage of the County Institution District Law, supra, art. VI, sec. 601, providing:

"Every independent poor district, lying wholly or partly within any county, is hereby abolished, except to the extent necessary to liquidate its affairs as hereinafter provided. Each of the present poor directors of every such independent poor district is hereby removed from office. Each such poor director, who is now paid for his services, shall be employed by the commissioners of the county in which he resides, until his present term of office shall expire, in the administration of this act and in the liquidation of the affairs of the independent poor district, receiving his present annual salary," did not intend to create an anomalous situation whereby a county, having an administrative system of poor relief, such as the County of Centre, would be compelled to employ 72 overseers of the poor from the effective date of said Act of 1937, to wit,

January 1, 1938, to the dates of the termination of their respective terms of office.

3. That said petition and alternative writ of mandamus fail to disclose the existence of any opportunity for employment of petitioner by Centre County Institution District.

4. That under the law of Pennsylvania governing payment of overseers of the poor of an independent poor district, as it existed prior to the passage of the County Institution District Law of 1937, supra, such officers were entitled to receive the sum of $1 per diem for each day necessarily engaged in the duties of their office; therefore, the petition for the writ and the alternative writ of mandamus are defective in that there is no averment specifying the number of days on which relator was entitled to be employed. The matter is, therefore, before the court on the motion to quash for the reasons set forth in said motion.

The first question raised by the motion is that petitioner, Lewis Hohnka, is not entitled to receive a salary of $30 a month or an annual salary of $360 as an overseer of the poor.

A public officer claiming a salary, fees, or compensation for services must show that such compensation is authorized by law before he will be entitled to recover the same: Rothrock v. Easton School Dist., 133 Pa. 487; Wayne County v. Waller et al., 90 Pa. 99; Nowling v. Newell, 65 Pa. Superior Ct. 67; County of McKean v. Young, Commr., 11 Pa. Superior Ct. 481.

According to the argument which was advanced by plaintiff in this case, he no longer contends that he is entitled to an annual salary of $360 but claims the right to amend his petition so that he might insert therein a claim for $300 as an annual salary, basing his contention upon the Act of June 8, 1907, P. L. 487, which provides:

"That from and after the passage of this act, the annual salary of each member of the Board of Directors of the Poor, in the several counties in this Commonwealth, shall

be as follows: In counties containing . . . over thirty thousand population and not exceeding fifty thousand population, three hundred dollars".

It is quite evident that this act at the time of its passage was not applicable to overseers of the poor where the counties were divided up into township and borough units but referred only to those districts which had become county units and where the law had provided that those in charge of the districts of that type were to be known as "directors of the poor". Plaintiff, however, relies upon The General Poor Relief Act of May 14, 1925, P. L. 762, referring particularly to section 200 which provides: "For the purpose of furnishing relief to poor persons, giving them employment, and carrying out the provisions of this act, each county of this Commonwealth is hereby created a district to be known as '. . . . . . . . . . . . . County Poor District': Provided, however,. . . .

"(d) The counties of Carbon, Luzerne, Centre, Columbia, Lycoming, Montour, Northumberland, Susquehanna, Wayne, Clinton, and Lackawanna shall be excepted herefrom so far as relates to the territorial subdivision thereof into districts"; and section 202 which provides: "In the counties of Carbon, Centre, Columbia, Lackawanna, Lycoming, Montour, Clinton, Luzerne, Northumberland, Susquehanna, and Wayne, the number of directors, overseers, and authorities in charge of said districts, the manner of their election or appointment, and the administrative system of giving poor relief shall continue as now vested by law, but all of said poor districts shall for all other purposes be subject to the provisions of this act."

It is quite apparent from the reading of these two sections that Centre County was not to be considered as a county unit, but counsel contends that the section of this act which relates to the salary to be paid is applicable to Centre County, and that payment under the provisions of the Act of 1907, supra, becomes applicable to Centre County Overseers of the Poor by reason of section 400 of

The General Poor Relief Act of 1925, supra, which reads as follows:

"The annual salary of each director of the poor shall remain as now fixed by law, to be paid in the same manner as employes of the county."

The law which would be applicable would be the Act of 1907 hereinabove referred to, if it includes overseers of the poor.

The Act of 1925, in setting up the new type of poor relief, provided in section 300 that "The number of directors in each district is fixed at three in all districts of the third and fourth classes and in all other districts except where a different number now prevails". Applying the amount of salary fixed by the Act of 1907 to a county like Centre County, if operated as a county unit, the three directors would have received $900. If an interpretation is to be placed upon the section of the Act of 1925 with reference to salaries, as is contended for by plaintiff, the salaries payable to the overseers of the poor would aggregate $21,600, probably 50 percent of the tax which had been levied and collected by the various poor districts prior to the effective date of the County Institution District Law of 1937. Surely, the legislature never intended a situation of this character to arise by placing such an interpretation upon the act of the legislature. An entirely different interpretation can be placed upon this section, more consistent with common sense. It is true that the Act of 1925 provides, in defining the word "directors" of the poor, that it "shall be taken to include and mean, unless obviously otherwise . . . overseers of the poor". If each overseer of the poor in Centre County were to be paid $300 a year, it would destroy the whole purpose of the Act of 1907 which was trying to create a uniform annual salary for districts, according to population, and provided that a director of the poor in a county of not less than 30,000 nor more than 50,000 should receive $300. The entire population of Centre County is less than 50,000, yet by placing such an interpretation upon the act

of assembly we would have the anomalous condition of 36 districts with an average population, as of the 1930 census, of 1,300 each, or an actual population of from 247 to 4,804, wherein there would be two overseers of the poor in each district receiving each $300. It is, therefore, quite obvious that in the use of the word "directors" of the poor it was not intended to include the office of overseer of the poor, nor did the legislature intend that such an interpretation would be placed upon this section which would increase the salaries of overseers of the poor from $1 a day for those days actually employed in the performance of their duties, to fixed salaries of $300 a year for each overseer of the poor. In the use of the words "director of the poor" in section 400, the legislature is only referring to the director of the poor which is created by the Act of 1925. The reason that this is quite evident is also established by the language that the annual salary is "to be paid in the same manner as employes of the county". If this particular section is to cover overseers of the poor, then it might well have been argued that the salary which the overseers of the poor were to receive was to be paid by the county, it being quite obvious that this is not so for prior to 1937 there were no county funds which could have been used for that purpose as all poor taxes were raised by the local units.

It must be borne in mind that in the exception of the County of Centre "the administrative system of giving poor relief shall continue as now vested by law." That expression is sufficiently broad to exclude the possibility that the overseers of the poor were to be paid out of the county funds and not out of the poor taxes which were raised by the individual municipal units from the taxpayers, and from which relief and all expenses had always been paid, and broad enough to include the old method of payment for services rendered by the overseers of the poor.

There was no provision in the law which had theretofore fixed an annual salary payable to overseers of the

poor, further indicating that this section was not applicable to those overseers of the poor functioning in the counties which had been excepted.

The only act of assembly which has been brought to the attention of the court, relative to payment of overseers of the poor as they existed in the County of Centre, was the Act of April 15, 1834, P. L. 537, which act abolished the office of overseer of the poor and placed the care of those needing relief under the control of the supervisors, and section 93 of said act provided: "Each supervisor shall be allowed, in the settlement of his accounts, a sum not exceeding one dollar for each day he shall be necessarily employed in discharging the duties of his office." The office of overseer of the poor was reëstablished by the Act of February 28, 1835, P. L. 45, when the provisions of the Act of 1834, abolishing the office of overseer of the poor, were repealed.

In reading the title of the Act of 1907, it is provided: "Fixing the salaries and providing for the expenses of the Directors of the Poor, in the several counties of this Commonwealth." Those who were elected and held office in Centre County were not directors of the poor but overseers of the poor. Section 400 of the Act of 1925 provides that the "salary . . . shall remain as now fixed by law". An examination of the law as it existed at the time of the passage of the Act of 1925 definitely indicates that overseers of the poor are to be paid at the rate of $1 per day for the time they are actually engaged in the performance of their duties. If this section of the Act of 1925 does not relate to their compensation, then the Act of 1834 would have to be accepted as the provision in force at the time of the passage of the later act.

The court is, therefore, of the opinion that this proceeding cannot be maintained because there is no provision in the law for the payment to an overseer of the poor of $30 a month or $300 a year, which would be applicable to an overseer of the poor of the type directed by law to hold

office in the various municipalities of Centre County prior to the passage of the Act of 1937.

A second reason advanced by defendants for the quashing of the alternative writ of mandamus is because the petition fails to disclose the existence of any opportunity or necessity for employment of plaintiff by the Institutional District of Centre County. Inasmuch as the court has held with reference to the first reason that plaintiff is not entitled to an annual salary, then it would be necessary for plaintiff to allege the necessity of employment, particularly if he was to be paid at the rate of $1 a day as hereinabove referred to. Obviously, defendants would not have to employ plaintiff in the performance of any duties outside his immediate district nor would defendants be compelled to employ plaintiff if there were not any duties to be performed in the district of the nature and character outlined in the Act of 1937. The burden would be upon plaintiff to allege and prove the existence of the necessity of his employment. This he has failed to allege and for this further reason the action cannot be maintained.

Due to the above conclusion it is not necessary for the court to pass upon the question of the duty of defendants to employ the overseers of the poor of the various districts. In fact this has already been decided by this court in the affirmative in the case of Dumbleton et al. v. Eckley et al., etc., 33 D. & C. 215. Reasons were set forth in the opinion last referred to why the overseers of the poor should be employed by defendants. However, the court is compelled to come to the conclusion which it has in this particular case for the reasons which have been set forth, and pursuant to those reasons the following decree is entered.

## Decree

And now, to wit, November 10, 1939, the writ of mandamus heretofore issued is hereby dismissed at the cost of petitioner.